UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 05-1890(DSD/JJG)

Arthur J. Gallagher & Co., and
Arthur J. Gallagher Risk
Management Services, Inc.,

        Plaintiffs,

v.                                                          **ORDER**

Ronald Youngdahl,

        Defendant.


        Donald W. Selzer, Jr., Esq., Jodie F. Friedman, Esq. and
        Littler Mendelson, P.C., 33 South Sixth Street, Suite
        3100, Minneapolis, MN 55402, counsel for plaintiffs.

        David P. Jendrzejek, Esq., Terese A. West, Esq. and Moss
        & Barnett, 90 South Seventh Street, Suite 4800,
        Minneapolis, MN 55402, counsel for defendant.


        This matter is before the court upon defendant's motion to dismiss. Based upon a review of the file, record and proceedings herein, and the arguments of counsel at the hearing, defendant's motion is granted in part.


**BACKGROUND**

        Plaintiff Arthur J. Gallagher & Co. ("Gallagher & Co.") is an international sales and marketing company engaged in the insurance business. Plaintiff Arthur J. Gallagher Risk Management Services, Inc. ("Gallagher RMS"), is a subsidiary of Gallagher & Co.

(collectively "Gallagher") and operates the Minnesota division of Gallagher & Co.   Defendant Ronald Youngdahl sold his independent insurance brokerage corporation, R.L. Youngdahl & Associates, Inc. ("RLY"), to Gallagher & Co. on February 29, 2000.   The parties executed an Agreement and Plan of Reorganization ("sale agreement").   In conjunction with the sale, Gallagher & Co. also hired Youngdahl pursuant to an employment agreement.   The employment agreement set forth duties and termination provisions that applied for a three-year term of employment, after which Youngdahl's employment would be at-will.

Both the sale and employment agreements contained non-compete clauses.   The non-compete clause in the sale agreement provided as follows:

> For a period of three years after the date hereof or after the date of the termination of his employment with Gallagher ..., whichever date occurs latest, [Youngdahl] will not, directly or indirectly, solicit, serve, sell to, divert, receive or otherwise handle insurance-related business with any individual, partnership, corporation or association that (a) is, or within the last two (2) years was, a client or customer of [RLY] or (b) is a prospective client or customer of [RLY].

(Schnebele Aff. Ex. A at 23.)   By contrast, the non-compete clause in the employment agreement provided as follows:

> [F]or a period of three (3) years following the termination of [Youngdahl's] employment for any reason whatsoever, he will not, directly or indirectly, solicit, place, market, accept, aid, counsel or consult in the renewal, discontinuance or replacement of any

> insurance (including self-insurance) by, or
> handle self-insurance programs, insurance
> claims, risk management services or other
> insurance administrative or service functions
> for, any [Gallagher] account for which he
> performed any of the foregoing functions
> during the two-year period immediately
> preceding such termination.

(Schnebele Aff. Ex. B at 9.)

The employment agreement also stated that, for two years "following the termination of his employment for any reason," Youngdahl could not "divulge [Gallagher's] Confidential Information or make use of it for his own purpose or the purpose of another." (Id. at 8.)  Such confidential information included "the identity, authority and responsibilities of key contacts at [Gallagher's] accounts."   (Id.)   For purposes of both the non-compete and confidential information clauses of the employment agreement, Gallagher's accounts included the accounts acquired from RLY.  (Id. at 9.)

During his employment, Youngdahl worked with Gallagher clients in the Minnesota region.  His three-year term of employment expired on February 28, 2003, but Youngdahl continued as an at-will employee until Gallagher terminated him on May 31, 2005.  Youngdahl was subsequently employed by a competing insurance company.  At his new job, he accepted clients that he had serviced while employed by Gallagher.  Most of those client accounts had been purchased by Gallagher from RLY in 2000.

On August 18, 2005, Gallagher filed this action, alleging that Youngdahl's post-termination activities constitute a breach of (1) the non-compete and confidential information clauses in the employment agreement, (2) the non-compete clause in the sale agreement and (3) the duty of loyalty.  On August 23, 2005, Gallagher moved for a temporary restraining order to enjoin Youngdahl from violating the sale and employment agreements.  The court denied the motion based primarily on Gallagher's failure to show irreparable harm.  (See Sept. 9, 2005, Order.)  Youngdahl now moves the court to dismiss the action as to plaintiff Gallagher & Co. for lack of capacity to sue in Minnesota.  Plaintiffs do not concede the point, but have agreed to voluntarily withdraw Gallagher & Co. from this action.  Therefore, the court grants Youngdahl's motion to dismiss plaintiff Gallagher & Co.  Youngdahl also moves the court to dismiss Gallagher's breach of contract claims for failure to state a claim upon which relief can be granted.  Gallagher opposes the motion.

## DISCUSSION

A claim may be dismissed for failing to state a claim upon which relief may be granted if, after taking all facts alleged as true and drawing all reasonable inferences in favor of the non-moving party, the court finds no possible facts under which plaintiff would be entitled to relief.  See Fed. R. Civ. P.

12(b)(6); <u>Haberthur v. City of Raymore</u>, 119 F.3d 720, 723 (8th Cir.
1997).  In this case, the sale and employment agreements are to be
interpreted according to Illinois law.  (<u>See</u> Schnebele Aff. Ex. A
at 35, Ex. B at 15.)   The interpretation of a contract is a
question of law that the court may properly decide on a motion for
dismissal.[1]   <u>See</u> <u>Corluka v. Bridgford Foods of Ill., Inc.</u>, 671
N.E.2d 814, 818 (Ill. App. Ct. 1996).

## I.   Construction of the Covenants in the Employment Agreement

Youngdahl contends that the non-compete and confidential
information clauses in the employment agreement are subject to a
strict construction.[2]   The court must strictly construe a
restrictive covenant, resolving any doubts or ambiguities against
the restriction. <u>See</u> <u>Marwaha v. Woodridge Clinic, S.C.</u>, 790 N.E.2d
974, 976 (Ill. App. Ct. 2003).  However, a restrictive covenant
that is ancillary to the sale of a business is subject to a less
stringent test of reasonableness.  <u>Health Prof'ls, Ltd. v. Johnson</u>,

---

[1] Gallagher argues that Youngdahl's motion to dismiss should
be treated as a motion for summary judgment because the court must
rely upon documents outside the pleadings.  (<u>See</u> Pls.' Mem. Opp'n
Def.'s Mot. Dismiss at 6-7.)   However, "[i]n a case involving a
contract, the court may examine the contract documents in deciding
a motion to dismiss."  <u>Stahl v. United States Dep't of Agric.</u>, 327
F.3d 697, 700 (8th Cir. 2003).  Here, the court needs only look to
the pleadings and the sale and employment agreements.  Therefore,
defendant's motion may be considered pursuant to Rule 12(b)(6).

[2] Youngdahl apparently concedes that the non-compete clause in
the sale agreement is ancillary to the sale of RLY and is therefore
subject to the less stringent test of reasonableness. (<u>See</u> Def.'s
Reply at 6-9.)

791 N.E.2d 1179, 1189 (Ill. App. Ct. 2003).  To determine whether a covenant is ancillary to a sale, the court looks to whether the parties intended to thereby protect the integrity of the sale.  Id. at 1190.  The relevant intent may be shown by execution of the covenant as a condition precedent to the sale and identification of the covenant as necessary for closing.  Id. at 1189-90 (recognizing, however, that no specific test exists).  Such restrictive covenants are subject to only a test of reasonableness because they are designed to protect the goodwill of the purchased business and they result from relatively equal bargaining power of the parties.  Id. at 1189.

Youngdahl argues that the non-compete and confidential information clauses in the employment agreement were not ancillary to the sale because the agreement does not refer to the sale of RLY.  Youngdahl is incorrect.  The employment agreement specifically mentions the sale of RLY and Gallagher's interest in employing Youngdahl pursuant to "the covenants herein in order to preserve the value of [RLY]."  (Schnebele Aff. Ex. B at 1.)  That statement directly demonstrates the parties' intent to protect the integrity of the sale of RLY through use of the restrictive covenants.  Moreover, the non-compete clause directs that all references to Gallagher in the non-compete and confidential information clauses include "the Acquired Business," which is RLY.  (See id. Ex. B at 1, 9.)  Finally, both agreements state that

execution of the employment agreement was a condition precedent to the sale.   (See Schnebele Aff. Ex. A at 28, 31; Ex. B at 1.) Although the non-compete clause in the sale agreement was likely meant to primarily protect the integrity of the sale of RLY, the court finds that the language in the agreements as a whole shows that the parties also intended the restrictive covenants in the employment agreement to further protect the sale's integrity.

The purposes behind imposing a less stringent test of reasonableness are also present in this case.  First, the explicit statement that the covenants in the employment agreement serve Gallagher's interest in preserving the value of RLY suggests that the parties intended to thereby protect the goodwill of RLY. Second, the language of the agreements and the facts as alleged in the complaint indicates that the parties had equal bargaining power when executing the agreements.  For all of the above reasons, the court finds that the contract language unambiguously indicates that the parties intended the non-compete and confidential information clauses of the employment agreement to protect the integrity of the sale of RLY.  Therefore, the restrictive covenants were ancillary to the sale of RLY and are subject to the test of reasonableness.

## II.  Enforceability of the Restrictive Covenants

Youngdahl contends that the restrictive covenants in the sale and employment agreements are unenforceable because they have expired.   In the absence of ambiguity, the court construes a

contract in accordance with "its own language, not according to the parties' subjective constructions." <u>William Blair & Co. v. FI Liquidation Corp.</u>, 830 N.E.2d 760, 770 (Ill. App. Ct. 2005). Contract terms are to be given their common and generally accepted meanings, within the context of the contract as a whole. <u>Id.</u> In particular, "words used in one sense in one part of a contract are deemed of like significance in another part." <u>Cedar Park Cemetary Ass'n v. Vill. of Calumet Park</u>, 75 N.E.2d 874, 880 (Ill. 1947). When one contract refers to and requires the execution of another contract, the court may consider both documents in determining the nature of the agreement at issue. <u>See</u> <u>H.B.G. Corp. v. Houbolt</u>, 367 N.E.2d 432, 435 (Ill. App. Ct. 1977).

**A.   Covenants in the Employment Agreement**

To determine whether a restrictive covenant expires upon the end of the term of employment under a contract, the court considers whether the covenant refers to the term of employment. <u>See</u> <u>Marwaha</u>, 790 N.E.2d at 976-77. For example, if an employment contract uses the general word "employment" when describing both the term of employment and the scope of the restrictive covenant, then the covenant is likely effective only within the term of employment. <u>See</u> <u>id.</u> In addition, the court must consider the parties' intent as expressed through instruments executed in the

course of the same transaction, which may include contracts for employment and the sale of a business.  See H.G.B. Corp., 367 N.E.2d at 436-37.

The court first looks to the specific language of the employment agreement.  The agreement specifically identifies the three-year term of employment as the "Term of Employment." (Schnebele Aff. Ex. B at 1.)  The agreement proceeds to explain: "Employment of [Youngdahl] shall not necessarily cease as of the expiration of the Term of Employment; however, employment thereafter shall be on an at will basis."  (Id.)  Later clauses regarding duties and termination before expiration of the three-year term specifically refer to Youngdahl's "Term of Employment." (See id. at 2-6.)  By contrast, the non-compete and confidential information clauses do not mention any "Term of Employment," but rather generally refer to the termination of Youngdahl's "employment for any reason whatsoever."  (Id. at 8-9.)

The language in the employment agreement shows that the parties intended to distinguish between Youngdahl's three-year Term of Employment and his overall "employment" with Gallagher both before and after the expiration of his three-year term.  Because the restrictive covenants refer only to Youngdahl's "employment" and apply for a period of years following his termination "for any reason whatsoever," the covenants do not expire at the end of his three-year term.  Rather, the reasonable construction of the non-

compete and confidential information clauses is that they are enforceable for three years and two years, respectively, after May 31, 2005, which is the day Gallagher terminated Youngdahl's employment.

The court next considers the parties' intent as expressed in both the employment and sale agreements because the parties executed them in the course of the same transaction.  The interests that the parties sought to protect in the sale agreement included the integrity of the sale and the goodwill of RLY.  (See Schnebele Aff. Ex. A at 22-23.)   Such intent supports the court's interpretation of the restrictive covenants in the employment agreement.  See H.G.B. Corp., 367 N.E.2d at 436-37 (holding same in case involving sale and employment contracts).[3]

Youngdahl argues that the court's holding in Marwaha requires the finding that the non-compete clause expired upon the end of his three-year term of employment, or February 28, 2003.  The court disagrees.  Unlike the agreements between Youngdahl and Gallagher,

_____

[3] Youngdahl argues that the decision in H.G.B. Corp. is distinguishable because the employee in that case remained employed under the same terms as the original contract. See 367 N.E.2d at 437.  Contrary to Youngdahl's assertion, the parties in H.G.B. Corp. expressly agreed "not to renew the written employment agreement," but rather to continue employment without specific terms. Id. at 434.  Nonetheless, the court considered the sale agreement that had been executed in conjunction with the employment agreement and found that the covenant not to compete in the latter contract survived. Id. at 437.  The court finds that the facts in H.G.B. Corp. are remarkably similar to the facts in this case.  Therefore, Youngdahl's argument is rejected.

the employment contract at issue in <u>Marwaha</u> used the general term "employment" to describe the three-year term of employment contemplated. <u>See</u> 790 N.E.2d at 976.  As a result, the court held that the term "employment" carried the same meaning in the covenant not to compete and applied only to the term of employment contemplated by the contract. <u>See</u> <u>id.</u> at 976-77.

Further, unlike the case in <u>Marwaha</u>, Youngdahl has failed to point to any language in the sale or employment agreement that casts doubt or ambiguity upon the court's interpretation.[4]  As a result, even if the restrictive covenants were subject to a strict construction, Youngdahl's argument must fail.  For all of the above reasons, the court finds that the non-compete and confidential information clauses in the employment agreement are enforceable for three years and two years, respectively, after Youngdahl's termination of employment on May 31, 2005.  Therefore, defendant's motion to dismiss plaintiffs' claim for breach of the employment agreement is denied.

---

[4] The court in <u>Marwaha</u> noted that "it would be strange for parties to an employment contract to provide for a noncompete provision to exist in perpetuity" because the scope of such a provision might be better determined in the future.  790 N.E.2d at 977.  Unlike the situation presented to the <u>Marwaha</u> court, the parties here executed a sale in conjunction with the employment agreement. As a result, interests already existed that enabled the parties to better determine the scope of a covenant not to compete.

**B.   Non-Compete Clause in the Sale Agreement**

Youngdahl argues that the non-compete clause in the sale agreement did not survive the consummation of the sale or, alternatively, the expiration of his three-year term of employment. The court disagrees.   The sale agreement's non-compete clause prohibits Youngdahl from conducting insurance-related business with certain former clients of RLY "[f]or a period of three years after the date hereof *or after the date of the termination of his employment* with Gallagher."  (Schnebele Aff. Ex. A at 23 (emphasis added).)  By its very terms, the clause survives the consummation of the sale and applies later upon Youngdahl's termination.

The court also rejects Youngdahl's argument that the clause expired upon the end of his three-year term of employment.  Similar to the restrictive clauses in the employment agreement, the sale agreement clause generally refers to Youngdahl's "employment" rather than to any "Term of Employment."   (Id.)   Moreover, Youngdahl has failed to point to any mention of a "Term of Employment" within the entire sale agreement.  For these reasons, the language of the sale agreement shows that the enforceability of its non-compete clause is not limited by the three-year term of employment contemplated under the employment agreement.  Rather, the reasonable construction  of the non-compete clause in the sale agreement  is  that  it  is  enforceable  for  three  years  after Youngdahl's termination of employment on May 31, 2005.  Therefore,

defendant's motion to dismiss plaintiffs' claim for breach of the sale agreement is denied.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Defendant's amended motion to dismiss [Doc. No. 20] is granted in part.

2.   Plaintiff Arthur J. Gallagher & Co. is dismissed from this suit without prejudice.


Dated:   February 3, 2006


s/David S. Doty
David S. Doty, Judge
United States District Court